[No. B092964. Second Dist., Div. Three. Feb. 7, 1997.]

JOHN PERSON, Plaintiff and Respondent, v.
FARMERS INSURANCE GROUP OF COMPANIES et al., Defendants;
PRISCILLA FELDSHER, Objector and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions deleted are noted by the insertion of the following symbol at the points of omission [[]].

**COUNSEL**

Priscilla Feldsher, in pro. per., for Objector and Appellant.

Rosoff, Schiffres & Barta and Robert M. Barta for Plaintiff and Respondent.

## OPINION

## ALDRICH, J.—

### INTRODUCTION

Appellant, Priscilla Feldsher, D.C., a nonparty witness, appeals from an order of the trial court requiring her to comply with a deposition subpoena and pay $3,014 in sanctions. In this appeal we are called upon to address the issue of whether a health care practitioner may refuse to comply with a valid deposition subpoena calling for the production of her patient's records until the patient or the patient's attorney signs a lien supplied by the health care practitioner. We hold that the records belong to the patient and the health care practitioner has no right to hold the records hostage in this manner. We therefore hold that the trial court did not err in requiring the health care practitioner to comply with the subpoena [[]].* Accordingly, the order is affirmed.

### FACTUAL AND PROCEDURAL SYNOPSIS

John Person sought treatment from Feldsher, a chiropractor, for injuries he sustained in an automobile accident. Person completed his treatment in February 1993. Seeking reimbursement of his expenses from his insurance company, Person requested his medical records from Feldsher.

On July 15, 1993, Person's attorney, Robert Barta, wrote to Feldsher requesting copies of Person's medical records and billing statements.[1] Person's authorization for release of his records was attached. Feldsher responded by stating she would not produce the requested documents unless Barta signed a lien for her fees. Barta refused to sign the lien on the ground it "contained unconscionable terms."[2] Feldsher refused to accept Barta's amendments. Because the statute of limitations was running out, Person filed an arbitration action against his insurance company.

On March 16, 1994, Barta served Feldsher with a deposition subpoena for the production of Person's records. Feldsher made records available for

---

*See footnote, *ante*, page 813.

[1]The records called for in the deposition subpoena were: "All documents and records, including, but not limited to, all office, emergency room, inpatient and outpatient charts and records, and hospital charts and records, itemized statements pertaining to John Person regarding [*sic*] automobile accident of 12/29/92. Date of birth: 07/29/70. Social Security Number: 557-29/[*sic*]3105."

[2]The record contains an illegible copy of the disputed lien form. However, because the issue before us is whether Feldsher was justified in refusing to comply with a deposition subpoena until the patient or his attorney signed a lien, we need not concern ourselves with the exact wording of the form.

copying on April 14, 1994. However, Feldsher did not produce all of the requested documents. On April 29, 1994, Feldsher wrote Barta that she was waiting for Barta to sign the lien form, and, "[a]*s soon as we receive this document* we *will forward to you a final narrative report* of findings along with a *complete* billing statement." (Italics added.) Barta served Feldsher with a second subpoena on October 20, 1994, seeking the identical documents. The second subpoena contained a typographical error requiring compliance on November 10, *1995*, instead of 1994. Feldsher did not respond.

Turning to the trial court[3] on December 6, 1994, Person moved for an order compelling Feldsher to provide the requested documents and for monetary sanctions in the amount of $3,014. In her opposition to the motion, Feldsher told the court, "I have never prepared a medical narrative report and billing statement. . . . *It is the policy of this clinic not to prepare a narrative medical report until this office have* [*sic*] *a fully executed lien.*" (Italics added.)

The trial court granted Person's motion, ordered Feldsher to produce the documents and pay Person $3,014 in sanctions within 20 days. The trial court denied Feldsher's motion for reconsideration of the sanctions order. On her own behalf, Feldsher filed this timely appeal.

### CONTENTION

(1) The trial court abused its discretion in granting Person's motion to compel Feldsher's compliance with the subpoena.

[[ ]]*

### DISCUSSION

[[ ]]*

2. *Medical Practitioners Must Produce Records Properly Requested by Patients.*

 Feldsher has no right to refuse Person his records. The Legislature made clear its intent that ". . . every person having ultimate responsibility for decisions respecting his or her own health care also possesses a concomitant *right of access to complete information* respecting his or her condition

---

[3]As the underlying proceeding was in the nature of an arbitration, Person obtained a superior court civil action number for the purposes of filing his motion to compel Feldsher to produce the subpoenaed documents.
 *See footnote, *ante*, page 813.

and care provided." (Health & Saf. Code, § 1795, italics added.)[4] As a result, the Legislature has devised procedures by which patients can obtain access to health care records or summaries. (*Ibid.*) Section 1795.12 specifies an adult patient of a health care provider, including a licensed chiropractor (Health & Saf. Code, § 1795.10, subd. (a)(8)), ". . . *shall* be entitled to inspect patient records upon presenting to the health care provider a written request for those records and upon payment of reasonable clerical costs incurred in locating and making the records available." (Health & Saf. Code, § 1795.12, subd. (a), italics added.) Evidence Code section 1158 also authorizes the patient or his or her representative to obtain these records. The patient may also copy the records.

There is nothing in this statute which allows the health care provider to refuse inspection and copying or to condition access to the records except for the reasonable clerical costs. Indeed, section 1795.12 of the Health and Safety Code declares a willful violation of this provision constitutes unprofessional conduct. Patients may enforce this provision by bringing an action and any judgment rendered may include the court's discretion, an award of costs and reasonable attorney fees pursuant to Health and Safety Code section 1795.16. (See Evid. Code, § 1158.)

In reenacting this provision in 1995, the Legislature saw fit to strengthen its enforcement provision. Subdivision (g) of Health and Safety Code section 123110, effective after the court made its ruling under dispute herein, provides, "This section shall be construed as prohibiting a health care provider from withholding patient records or summaries of patient records because of an unpaid bill for health care services. *Any health care provider who willfully withholds patient records or summaries of patient records because of an unpaid bill for health care services shall be subject to the sanctions specified in subdivision (f).*" (Italics added.) Such sanctions include authorizing the state agency licensing the health care practitioner to ". . . consider a violation [of this section] as grounds for disciplinary action with respect to the licensure, including suspension or revocation of the license or certificate." (Health & Saf. Code, § 123110, subd. (f).) Although the subdivision passed in 1995 is not applicable to Feldsher, it indicates the seriousness with which the Legislature disapproves of the willful withholding of patients' records.

The discovery statutes produce the same result. Rule 1612 of the California Rules of Court makes the discovery provisions in the Code of Civil

---

[4]In 1995, in the general reorganization of the Health and Safety Code, sections 1795 through 1795.26 were repealed and reenacted as sections 123100 through 123145. (Stats. 1995, ch. 415 (Sen. Bill No. 1360).) We refer to the code sections applicable at the time of the trial court's order.

Procedure,[5] sections 2002 to 2042, applicable to arbitrations. Also in arbitrations, subpoenas are served and enforced under section 1985 et seq. (§ 1282.6, subd. (c).) Subdivision (d) of section 2020, authorizes service of a deposition subpoena for the production of documents on a nonparty witness and subdivisions (g) and (h) authorize punishment for "*refusal . . . to produce*" documents requested in the subpoena. (Italics added.) In short, Feldsher had no basis for refusing Person or his attorney access to those records to which he had a statutory right.

■ In holding that a health care practitioner may not refuse inspection and copying or condition access to patient records, we refer to records which exist at the time of the discovery request. However, the health care provider may not avoid the mandate of court process by not preparing such a record when the raw data is available to do so. When billing records or "itemized statements" are requested they should be produced if: (1) the raw data which would support such a statement exist; (2) all that is required to produce the billing statement is a compilation of existing data; and (3) preparation of the compilation would not be unduly burdensome or oppressive. Under such circumstances, we hold, the health care provider must compile and provide the itemized statement in response to a proper discovery request. The burden is upon the health care provider to establish that the compilation would be unduly burdensome or oppressive.

■ While Feldsher may have produced nine pages in response to the first request for production in April 1994, by her own repeated admissions, *Feldsher refused to produce the requested medical report and complete billing statements* until Barta's counsel executed her lien. Feldsher admitted as much in her letter to Barta as well as in her opposition to the motion to compel. The medical records and certainly billing statements are documents created in the course of her practice. Feldsher may not unilaterally condition her compliance with the subpoena in this manner. Nor may she frustrate the lawful process of the court by pleading that she does not prepare billing records until the lien is signed. It is without question that Feldsher, like any other health care practitioner, keeps records of treatments and charges which constitute the raw data from which a simple arithmetical computation can produce the subpoenaed document. Feldsher deliberately refused to respond to the subpoenas in direct violation of section 2020 and Health and Safety Code section 1795.12.[6]

---

[5]Hereinafter, all statutory references shall be to the Code of Civil Procedure unless otherwise noted.

[6]We are unpersuaded by Feldsher's contention she cannot be held responsible for failure to respond to the second deposition subpoena because the date for compliance was not until

[[]]*

## DISPOSITION

The order is affirmed. Costs are awarded to respondent.

Klein, P. J., and Croskey, J., concurred.

;

---

November 1995, more than a year after the subpoena was served. The date for the subpoena was listed on the proof of service as "11/10/*94*" and Feldsher was in contact with Barta. (Italics added.)

*See footnote, *ante*, page 813.